**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| **HARRY WILLIAM DOWNS,** | ) | |
| | ) | |
| | ) | CASE NO. 05-70414 |
| | ) | |
| DEBTOR | ) | |

**MEMORANDUM DECISION**

The matter before the Court is the United States Trustee's Motion to Dismiss Pursuant to 11 U.S.C. § 707(b) filed May 9, 2005 in which the United States Trustee alleges that the Debtor, Harry William Downs, under-reported his income on Schedule I and that he has the purported ability to make a substantial payment to his general creditors by means of a Chapter 13 plan. This matter was set for trial and heard on September 26, 2005. After due consideration of the facts and circumstances of this case, including the Debtor's financial condition and the applicable law, the Court concludes that the Motion should be denied.

FINDINGS OF FACT

This Chapter 7 case was filed on February 8, 2005 although the petition and schedules indicate that they were signed by the Debtor and his counsel on January 12, 2005. The schedules reported that the Debtor owned no real estate and only very limited personal property, consisting of a 2004 Dodge Intrepid valued at $9,845, an income tax refund valued at $900, clothing valued at $250, golf clubs valued at $150, a bank account valued at $2, and miscellaneous items of furniture and other household goods, including a "big screen" television,

valued in the aggregate at $2,000. The automobile was subject to a purchase money loan in the amount of $16,400 and accordingly there was no equity in it. All other property, save only the $2 bank account, was claimed as exempt. Likewise, his debts were limited, consisting of $16,400 owed on the Intrepid, a medical bill in the amount of $325, six credit card accounts upon which in the aggregate a total of $6,841.27 was owed, two "pay day" loans in the aggregate amount of $923, an unsecured loan in the amount of $3,947 owing to an individual and a charge account in the amount of $252.50 for miscellaneous purchases owing to the PGA Tour Players Club. The total of this unsecured debt, not including any part of the automobile loan to be reaffirmed, was $12,973.02. The Debtor has not made any contention that these debts are not "consumer debts" within the meaning of 11 U.S.C. § 707(b) or that such status has not been proved. In his Statement of Intention, the Debtor represented that he intended to reaffirm his legal obligation upon the automobile loan. In Schedule I the Debtor represented that he had gross monthly income of $2,565.33, which after payroll deductions of $674.37 and a spousal support obligation of $433.33 a month left a net disposable income of $1,457.62 per month. Against that average monthly income Mr. Downs reported in Schedule J  $1,735 in average monthly living expenses, including a $351 monthly payment on his automobile. Mr. Downs is single and has no scheduled dependents.

        The United States Trustee urges that this case is one of substantial abuse because he asserts the Debtor understated in Schedule I his actual monthly income by $773 and that he has the ability to pay his entire unsecured debt of $12,973 in fewer than thirty-six months. The accuracy of such factual assertions is crucial to a proper determination of the Motion before the Court. To arrive at the Debtor's monthly income at the time of filing, the United States Trustee

divides the former's income for the preceding year as reflected in his tax statement by twelve, which results in a monthly figure of $3,339. The figure compares with Schedule I gross monthly income of $2,565. After adjusting income and deductions "to the proper amounts according to his pay statements," the United States Trustee contends that Mr. Downs has the ability in a thirty-six month Chapter 13 case to pay his entire unsecured debt.

The difference between the Debtor's scheduled income[1] and what the United States Trustee claims to be his actual income is principally explained by three factors: the receipt of discretionary bonuses from his employer; the fact that he worked during three weeks of paid vacation in 2004 and thereby earned in effect double compensation during such weeks, that is to say he was paid both for working and for the vacation which he could have taken but did not; and the fact that his scheduled monthly income appears to have been derived from multiplying the "regular" paycheck which he received every two weeks by two rather than multiplying it by twenty-six, the number of two week pay periods in a year, and dividing the result by twelve, the number of months in a year. In his testimony the Debtor contended that the bonuses, amounting according to his testimony to $5,000 to $6,000 in 2004, were dependent upon the volume of work done by the business, its profitability and the exercise of discretion by his employer. He stated that he had no assurance of the continuation of such bonuses. No evidence to the contrary was introduced by the United States Trustee. The Debtor further testified that in 2005 his employer's policy about working during periods of paid vacation changed and that he was no longer able to do that. It appears, however, that such change in policy did not occur until May of

---

[1]The Debtor did not indicate either in his testimony at trial or the exhibits introduced into evidence exactly how he arrived at the gross monthly income figure of $2,565.33 contained in Schedule I.

-3-

this year and therefore was not a factor which could have affected the Debtor's preparation of his schedules in January. In 2004 the Debtor worked three weeks of paid vacation; but in 2003 he took a week of vacation and worked during two weeks of paid vacation. Although the amount of base salary apparently did not change from 2003 to 2004, his actual income was $34,231 in 2003 and $40,363 in 2004. His actual income thru January 27, 2005, which included two regular paychecks was $2,633.10. The difference in the Debtor's monthly regular income between simply doubling his regular two week paycheck ($2,633.10 for four weeks), and the figure determined by multiplying such paycheck by twenty-six and then dividing by twelve (a result of $2,852.55 per month) is $ 219.45 per month. Because the bonuses paid to Mr. Downs were, based on the evidence, wholly beyond his control and were not something either he or a Chapter 13 plan could count on, the Court believes they should be disregarded in determining his actual income as of the petition date. Because for the immediately preceding two years the Debtor had worked a minimum of two weeks of paid vacation during each year, the Court finds that such income should have been included in determining his average monthly income as of the filing date. This finding is supported by the fact that during the four months following the filing date the Debtor worked some paid vacation, apparently his entire three weeks of vacation for 2005, which suggests strongly that as of the filing date the Debtor had no intention to change his past practice of working at least two weeks of paid vacation during the year. Finally, the Court finds that the "regular" annual earnings for the year should have been divided by twelve to determine an average monthly income, the failure to do so resulted in an understatement of such income. Accordingly, the Court finds that the Debtor's actual average monthly income as of the filing date was $2,962.26, which is the result of the sum of annual "regular" income ($34,230.56) plus

two weeks of paid vacation income ($1,316.56), a total of $35,547.12, divided by twelve. The Court's analysis, therefore, is that the Debtor understated his actual petition-date average gross monthly income by $396.91, approximately 15.50 % of the scheduled income of $2,565.35 per month. From the computed amount of $2,962.26 for gross average monthly income must be deducted an average of $704.90 per month for employment and withholding taxes to arrive at an average net monthly income of $2,257.36, before payment of the spousal support obligation, available for living expenses and payments to creditors.

Although it does appear from the evidence at trial that the Debtor's actual spousal support obligation was overstated by a minimum of $33.33 per month ($433 - $400), and perhaps as much as $133.33 per month, such discrepancy was not challenged by the United States Trustee and cannot be considered by the Court.[2]

The United States Trustee has not challenged the accuracy or reasonableness of the Debtor's reported living expenses of $1,735 per month in Schedule J. He does not challenge the reasonableness of the Debtor's "family budget" other than the alleged failure to reflect the Debtor's actual income. This $1,735 per month figure includes a $351 per month car purchase

---

[2] "The United States trustee shall set forth in the motion [to dismiss for substantial abuse pursuant to section 707(b)] all matters to be submitted to the court for its consideration at the hearing." Federal Rule of Bankruptcy Procedure 1017(e)(1). The Debtor's paycheck stubs introduced into evidence reflected $3,600 in total payments for "garnishment" in 2004 and $1,800 thru June 30, 2005, in each case an average of $300 per month as contrasted with the scheduled amount of $433.33 or the $400 amount asserted by the Debtor in his testimony.

-5-

payment[3] but does not include the spousal support obligation, which was treated in Schedule I as a deduction from gross income to arrive at "take home" pay. Taking this support obligation at the $400 per month amount testified to by the Debtor at trial without challenge, the Debtor's total monthly living expenses and continuing obligations were $2,135 as of the filing date. Deducting this amount of $2,135 per month from the Debtor's determined actual average net monthly income of $2,257.36 results in a difference of $122.36 per month theoretically available for a Chapter 13 plan at the time Mr. Downs filed his bankruptcy petition. After giving effect to an assumed 10% expense factor in a Chapter 13, a figure posited by both parties, results in a net amount of $110.13 per month. Utilizing this figure for a thirty-six month Chapter 13 plan would project a total distribution to general unsecured creditors of $3,964.68, equivalent to 30.56% of Schedule F debt.

    The United States Trustee asserted in his Motion that the Debtor did not file his petition "because of a sudden illness, calamity, disability or unemployment" but rather as a result of his "overspending over time and the refusal to adjust cost of living expenditures to reflect the obligation to repay creditors." Neither party introduced express evidence on this issue, but the Court believes that this assertion is established as a fair inference from the evidence because the Debtor was employed in his long term job both before and after the bankruptcy filing, the income statements do not reflect any loss of time from work, the schedules do not reflect any significant amount of debt outstanding to hospitals, doctors or other medical care providers,

---

[3]According to Schedule D, this obligation was incurred in 2004, but the due date of the last payment was not disclosed in the schedules or otherwise in the evidence. Accordingly, the Court has no basis to assume that such payment would terminate within a possible thirty-six month Chapter 13 plan. In his bankruptcy petition, the Debtor represented an intention to reaffirm his liability upon this obligation.

although the Debtor testified he never made any claim that his bankruptcy filing was the result of any specific untoward event, and the schedules do not reflect any debt suggesting the occurrence of any extraordinary event resulting in financial loss or liability. Accordingly, the Court finds that the bankruptcy was not the result of "a sudden illness, calamity, disability or unemployment."

The only claim made against the Debtor's good faith in filing his petition is that filing bankruptcy schedules which understate his monthly income "by as much as $773 is not acting in good faith with one's creditors." No evidence was offered at trial to make any other challenge to the Debtor's good faith. The evidence does not establish an intentional understatement of income intended to mislead the Court, the creditors or the United States Trustee. Accordingly, the Court finds that the Debtor filed his petition in good faith.

## CONCLUSIONS OF LAW

This Court has jurisdiction of this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984. A motion to dismiss for substantial abuse is a "core" bankruptcy matter pursuant to 28 U.S.C. § 157(b)(2)(A).

A court may dismiss a Chapter 7 bankruptcy case upon a motion by the United States Trustee if the case is filed by a debtor with primarily consumer debts and granting relief would be a substantial abuse of Chapter 7 provisions. 11 U.S.C. § 707(b). *Collier on Bankruptcy* points out that Congress was concerned with the abuse of consumer debt and that § 707(b) of the Code was adopted as "part of a package of consumer credit amendments" included in the

Bankruptcy Amendments and Federal Judgeship Act of 1984. 6 *Collier on Bankruptcy* ¶ 707.LH[2] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.). Section 707(b) only applies to an individual debtor whose debts are "primarily consumer debts." Rule 1017(e) of the Federal Rules of Bankruptcy Procedure, implementing this section, provides that the "United States [T]rustee shall set forth in the motion all matters to be submitted to the court for its consideration at the hearing." It is unmistakably clear that such motions are not to be readily granted and that the onus is upon the United States Trustee to prove that the case is abusive, both by the quoted language in Rule 1017(e) and also by the last sentence in § 707(b), granting a presumption in favor of the debtor.

The Bankruptcy Code does not attempt to define "substantial abuse" and court**s** have struggled to apply this provision given the plethora of factual situations presented by debtors. In summary, Congress appears to have been concerned about persons who knowingly or recklessly live beyond their means, who live the good life using the resources of their creditors to do so and then choose to walk away from their debts even though they have the financial ability to pay them and although their income levels may have given them the access to the credit markets which have made their liberal lifestyles possible.[4]

---

[4] *Collier on Bankruptcy* points out that in enacting § 707(b),

> Congress rejected attempts by the consumer credit industry to permit creditors to move for dismissal of cases on the basis that the debtor had an ability to pay debts. It also rejected the idea that a case should be dismissed simply because a debtor could pay a "reasonable portion" of his or her debts (defined as 50%), as well as the use of a five year period to determine whether such portion could be paid. The resulting section 707(b) is thus more narrow than the provisions originally sought be the consumer credit industry and targeted only at debtors who can pay their debts without difficulty.

The Fourth Circuit Court of Appeals has adopted a "totality of the circumstances" test in determining whether substantial abuse has occurred. *Green v. Staples (In re Green)*, 934 F.2d 568, 570 (4th Cir. 1991).  In *Green*, the Court listed a number of factors to be considered:

> (1) Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;
> (2) Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;
> (3) Whether the debtor's proposed family budget is excessive or unreasonable;
> (4) Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and
> (5) Whether the petition was filed in good faith.

*Id.* at 572. The *Green* court further held that:

> Exploring these factors, as well as the relation of the debtor's future income to his future necessary expenses, allows the court to determine more accurately whether the particular debtor's case exemplifies the real concern behind Section 707(b): abuse of the bankruptcy process by a debtor seeking to take unfair advantage of his creditors.

*Id.*  The Court in *Green* further pointed out that a vast majority of circuit courts have held that the debtor's ability to repay is the primary factor to be considered. *Id.*  District Judge Kiser of this District has recently analyzed *Green* in *In re Harrelson*, 323 B.R 176 (W.D. Va. 2005).  This opinion offers the most recent analysis by a court to which an appeal from this Court lies detailing how a motion pursuant to § 707(b) for alleged substantial abuse ought to be determined.  This Court will undertake, therefore, to apply the methodology of that decision in deciding the present Motion.

*Ability to repay*

---

6 *Collier on Bankruptcy* ¶ 707.LH[4] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.).

In *Harrelson*, Judge Kiser emphasized that "the ability to repay, although not a dispositive factor, is the primary factor in determining substantial abuse." *In re Harrelson*, 323 B.R. at 179 (citing *Shaw v. U.S. Bankr. Adm'r*, 310 B.R. 538, 540 (M.D. N.C. 2004) and *In re Norris*, 225 B.R. 329, 331-32 (Bankr. E.D. Va. 1998)).  Judge Kiser went on to note that *Green* requires courts to look at the totality of the circumstances and stated that a court "may not dismiss debtors' ability to repay debts as an irrelevant factor. On the contrary, it is the primary factor in determining substantial abuse.  Courts have held that a debtor's ability to repay weighed in favor of a substantial abuse finding when the debtors could only pay 29% or 47% of their unsecured debt over a period of three years." *Id.* (citing *Shaw*, 310 B.R. at 540 and *In re Norris,* 225 B.R. at 332).  The *Green* court goes on to state, however, that "solvency alone is not a sufficient basis for a finding that the debtor has in fact substantially abused the provisions of Chapter 7." *In re Green,* 934 F.2d at 572.

The United States Trustee asserted that the Debtor's actual income was such that he could pay 100% of his unsecured debt in fewer than thirty-six months in a Chapter 13 plan.  Based on the Findings of Fact made above, the Court found that such was not the case, but that the Debtor based on his schedules and testimony, could pay approximately 30.56% of such debt.  This is in the very low range of what has been considered an ability to repay one's debts.  Accordingly, this factor weighs against the Debtor, but not nearly as heavily as an ability to pay all of his debt or something reasonably approaching that.

*Petition filed as a result of a sudden illness, calamity, disability or unemployment*

The court in *Harrelson* held that this factor weighs in favor of dismissal when the filing is not due to some "unforeseen tragedy." *In re Harrelson*, 323 B.R. at 178 (citing *In re*

*Norris*, 225 B.R. at 333).  The Court has found that the most reasonable inference from the evidence is that the Debtor did not file his Chapter 7 petition as a result of any such tragedy, but rather because he simply borrowed more than he could easily repay to cover his expenses of living.  This factor weighs in favor of a substantial abuse determination.

*Whether the Debtor incurred cash advances or made consumer purchases far in excess of his ability to pay*

Case authority on this point varies widely.  In *In re Vansickel*, 309 B.R 189, 211-12 (Bankr. E.D. Va. 2004), the court held that "relatively modest" debts including $28,000 in unsecured debt did not weigh in favor of dismissal, holding that due to the statutory presumption in favor of granting a debtor bankruptcy relief, the United States Trustee did not meet his burden of proof in establishing substantial abuse. In *In re Norris*, 225 B.R. at 333-34, however, the court held that this factor did weigh in favor of dismissal when the debtors incurred more than $90,000 of unsecured debt, lived in an expensive home, dined out, and utilized their 401(k) plans to create a reserve fund for future expense.  Additionally, another district court held this factor weighed in favor of dismissal when the debtors purchased a $4,000 bedroom suite, spent $1,000 a month for their daughter's college expenses, lived in a home they could not afford but were unwilling to leave, and purchased two new cars. *Shaw,* 310 B.R. at 540-41.

In this case the Debtor did incur some cash advances as reflected in his obligations to two "pay day" lenders, but the total amount of his unsecured debt was less than $13,000.  Adding the car purchase loan in the amount of $16,400 results in a total consumer debt of less than $30,000, the majority of which, according to the Debtor's Statement of Intention, is the car loan.  Mr. Downs intended to pay following bankruptcy.  It would be considerably

overstating the facts to make any determination that Downs incurred consumer credit obligations "far" in excess of his ability to pay. The fact that he did incur obligations which did exceed his ability to pay, at least based on his budget, is commonplace in bankruptcy, not a sign of the type of abusive filing which Congress undertook to prohibit. This factor weighs against the United States Trustee's Motion.

*Excessive and unreasonable family budget*

The United States Trustee has not made any contention that the Debtor's budget is excessive or unreasonable. Accordingly, this factor weighs in favor of the Debtor.

*Accuracy of the Debtors' schedules*

In his opinion in *Harrelson,* District Judge Kiser held that under the Fourth Circuit's decision in *Green,* inaccuracy of bankruptcy schedules is a factor, regardless of the Debtor's motive or intent to deceive, and therefore relevant. *In re Harrelson,* 323 B.R. at 179. In this case the Court has found that the Debtor's statement of his income was materially inaccurate, although not nearly to the extent claimed by the United States Trustee. Accordingly, this factor weighs in support of the Motion to Dismiss.

*Bad faith*

Judge Ellis of the Eastern District of Virginia in *McDow v. Smith*, 295 B.R. 69 (E.D. Va. 2003), a case involving a motion to dismiss for "cause" under 11 U.S.C. § 707(a), stated generally that "a debtor's 'bad faith' or 'lack of good faith' is evidenced by the debtor's *deliberate* acts or omissions that constitute a misuse or abuse of the provisions, purpose, or spirit of the Bankruptcy Code." *Id.* at 74 (emphasis added). Of particular significance on this point would be a finding of wrongdoing on the part of the debtor, either in the accumulation of the

-12-

debt or in the filing of the Chapter 7 petition. *Id.* at 82. Most cases resulting in a finding of bad faith involve egregious factual situations wherein the debtor has accumulated massive amounts of credit card debt with no intent to repay the debt, lives a lifestyle far above what he or she could afford and/or intends to avoid a large single debt. *In re Zick*, 931 F.2d 1124, 1129 (6th Cir. 1991); *see also In re Haddad*, 246 B.R. 27, 38 (Bankr. S.D. N.Y. 2000) (in addition to living an extravagant lifestyle, debtor was not candid in disclosure requirements and attempted to claim a wedding band as exempt while unmarried); *In re Ragan*, 171 B.R. 592, 596 (Bankr. N.D. Ohio 1994) (case dismissed under 707(b) after debtor withdrew more than $160,000 from IRA and recklessly spent it all with little or no regard for obligations to creditors).

Other than the issues of under-reporting the Debtor's income and his perceived ability to pay some portion of his debt by means of a Chapter 13 plan, as already noted above, the United States Trustee has not asserted that the Debtor has demonstrated bad faith either in incurring debt or seeking bankruptcy relief. The Court has made a Finding of Fact that the Debtor filed his petition in good faith. Accordingly, this factor weighs in favor of the Debtor.

*Other factors*

The Court of Appeals's opinion in *Green* did not hold that the factors it enumerated were exclusive or exhaustive. It adopted a "totality of circumstances" test which called for consideration of factors "such as" the ones specifically listed. *In re Green,* 934 F.2d at 572; *see also In re Vansickel,* 309 B.R. at 169 n.9 (stating that the *Green* list is illustrative rather than exhaustive). Neither party has suggested the presence of appropriate "other factors" which ought to impact the Court's decision upon the United States Trustee's Motion and the Court has not recognized any on its own part.

DECISION

The factors supporting the United States Trustee's Motion are the apparent ability of the Debtor to pay approximately 30% of his unsecured debt in a thirty-six month Chapter 13 plan, an understatement by a little more than 15% of the Debtor's average monthly income, and the fact that the bankruptcy filing was not the result of some unforeseen calamity. The factors going the other way are the Debtor's good faith, the fact that his debts are not a result of consumer purchases or cash advances "far" in excess of his ability to pay, and a living expense budget which is not claimed to be excessive or unreasonable. Of these factors ability to pay is entitled to the greatest weight, *In re Harrelson,* 323 B.R. at 179, but in this case an ability to pay 30% of unsecured debt totaling less than $13,000 in a thirty-six month Chapter 13 plan is not a very strong factual basis to support a determination of substantial abuse of the bankruptcy system. While there may well be doubt that Mr. Downs really needed Chapter 7 bankruptcy relief and a suspicion that, had he been infused with a strong desire to do so, he might by adjusting his living expenses or seeking additional income have paid his creditors, the law governing the decision of this case[5] did not present that type of necessary alternative to Mr. Downs. Considering also the presumption in favor of granting a discharge expressly provided by section 707(b) of the Code, the Court does not believe that the factual situation presented here, while in some respects troubling as to the Debtor's wish to obtain relief from financial obligations which on his own he might with effort and motivation have dealt with without the

---

[5] The applicable law governing the determination of this case is that existing prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

benefit of such relief, is the type of "abusive" filing which Congress intended to limit by the passage of such section.

In view of the Court's decision in the matter, it need not take up the contention made by Debtor's counsel that the United States Trustee must prove a case of substantial abuse by "clear and convincing evidence", citing the case of *In re Kelly,* 841 F.3d 908, 917 (9th Cir. 1988), in support of such contention. While the Court, after reading the opinion in such case, doubts that it actually stands for the proposition asserted by counsel, it is not necessary to this decision to make any actual conclusion of law on such point.

For the reasons stated, the Court by separate order will deny the United States Trustee's Motion to Dismiss.

This 18th day of November, 2005.

/s/ William F. Stone, Jr.
UNITED STATE BANKRUPTCY JUDGE